**WILSON ATHLETIC GOODS MFG. CO., Inc., v. UNITED STATES.**

No. 9175.

Circuit Court of Appeals, Seventh Circuit.

June 10, 1947.

916

J. Albert Woll, U. S. Atty., and John Peter Lulinski, Asst. U. S. Atty., both of Chicago, Ill., and John F. Sonnett and Marvin C. Taylor, both of Washington, D. C. (J. Francis Hayden, Sp. Asst. to Atty. Gen., of counsel), for appellant.

Louis R. Simpson and Paul Ware, both of Chicago, Ill., for appellee.

Before EVANS, and MAJOR, Circuit Judges, and BRIGGLE, District Judge.

## BRIGGLE, District Judge.

The government appeals from a judgment of $8,185.47 [1] rendered against it and which represented plaintiff's claim growing out of the requisition and seizure of aluminum goods belonging to the plaintiff. The seizure was made after the government had entered an order which destroyed all market for such aluminum sports goods. It is the government's position that just compensation to plaintiff for the property seized is $1,007 which is approximately the scrap value of the aluminum seized. Its theory was that scrap value is decisive because at the time of seizure there was no other market value of such property.

Plaintiff, the Wilson Athletic Goods Mfg. Co., makes and sells large quantities of athletic goods, including golf and baseball equipment. An officer of plaintiff testified it had on hand 6263 pounds of aluminum, some of which was in sheet form, some had been cut into "sole plates" for golf clubs, and some aluminum putter heads, and some had been processed into baseball masks (some masks were painted. and some were unpainted)—in fact there were 61 separate lots of material seized. The purchase price to plaintiff and its labor cost totalled $7,502.91, which was the sum it demanded.

The government introduced the testimony of an expert witness, long in the smelting business, who testified that the market value of the aluminum here involved, as scrap, was from 9½ to 10½ cents a pound. If the scrap were painted, as were some of the baseball masks, the value was a cent less than regular scrap price.

In April, 1942, the War Production Board had promulgated the order which made plaintiff's processed products incapable of use for sports purposes, and rendered them temporarily obsolete. [2] The government sought an amicable purchase of the aluminum material at scrap value, but plaintiff refused to sell at scrap price. The government thereupon formally requisitioned the material and seized it in December, 1942, for war purposes. Plaintiff was asked to file its claim for compensation, which it did, asserting that just compensation was $7502.91, which sum was the initial cost and $694.29, actual labor costs. The government made a preliminary determination of fair and just compensation to be $1007, and in accordance with statutory procedure paid fifty per cent thereof ($503.-50) to plaintiff, who thereupon filed suit to recover the balance of its claim.

The trial before the court was brief and the judge's views were tersely stated thus:

" * * * in this situation, it is unconscionable to think that the government can take this property, and where it is proven by. the stipulation that it costs so much, and that the property could be sold for a profit, I assume, when they could make it again, it is just repugnant to my sense of fairness, equity and justice. I am going to find the issues here for the plaintiff."

The government cites many interesting cases arising out of the impact of war upon private industry and the restricted sale of products and price ceilings. We do not question their ratio decidendi. Our issue is—what is just compensation for the property which the government took from plaintiff. Must the value in normal times, or the actual cost, be disregarded, and the sole criterion be the market value at scrap price,

[1] $6999.41 plus $1186.06, five per cent interest from December 15, 1942, the time of requisition.

[2] Restriction was lifted August 15, 1944.

which was the only legal market open at the time of seizure? On the other hand, was the fact of the existence of war, and government regulations prohibiting sale of the articles to be completely disregarded?

The Act provides, 50 U.S.C.A.Appendix, § 721(as amended): "Whenever the President * * * determines that * * * materials necessary for the manufacture * * * of * * * supplies * * * is needed for the defense of the United States; * * * and all other means of obtaining the use of such property * * * upon fair and reasonable terms have been exhausted, he is authorized to requisition such property * * * upon the payment of fair and just compensation for such property. * * * each such determination shall be made as of the time it is requisitioned * * *."

■ The controversial situation here stems from two separate acts by the government —the one an order terminating the ordinary commercial uses for aluminum, the other seizing the aluminum products owned by plaintiff. Both orders, made while our government was at war, must be accepted for our purposes as proper and within the governmental power. The first order destroyed the ordinary market for aluminum; it could not be used by plaintiff or sold by plaintiff except to the limited purchaser. Of these acts of the government the plaintiff cannot complain, although it suffered material loss; but neither can it be denied that the plaintiff had the inherent right (subject to condemnation) to retain its property for future uses when it might become proper. This was a speculative right, but, nevertheless, an incident of ownership of property. The effect of war upon marketability and value is necessarily one of the elements to be considered in determining what is "fair and just" compensation. The scrap value of aluminum was to be considered and cost to plaintiff of the requisitioned property was likewise a proper element for consideration. The government by its order had destroyed ordinary market value and, absent the usual tests for determination of fair market value (such as willing seller and willing buyer, etc.) the District Court was obliged to avail itself of such evidence as was at hand in determining fair and just compensation.

The Court of Claims' discussion in Illinois Pure Aluminum Co. v. United States, 67 F.Supp. 955, 956, certiorari denied March 10, 1947, 67 S.Ct. 965, is pertinent:

"A manufacturer of fine watches might have on hand some highly tempered precision springs. The Government would have the right in wartime to requisition them for any essential war purpose, but no one would claim the right to class them as ordinary iron or steel, dump them into a truck with scrap material for remelting purposes, and pay for them on the basis of average steel, regardless of their cost, finish, or value to the holder. On the other hand, we do not think plaintiff can justly claim a value that would have prevailed had no wartime regulations or controls existed or been necessary. * * *

"Regulations, priorities and controls are vital in wartime. These wartime rules necessarily affect values. Had the plaintiff's property not been requisitioned, it would have been faced with the necessity of going to the expense of finding some concern which had a war contract and making the best sale it could, or of holding its stocks until the emergency was ended, which would mean a tie-up of capital and expense of storage as well as other possible loss and expense. Any just valuation must take into consideration these conditions. Otherwise the owners whose stocks were requisitioned would be put into a preferred classification over concerns whose stocks were not taken, but the disposition of which was necessarily limited by essential wartime restrictions."

In that case the cost price of the aluminum was $45,918.07, the company claimed $45,145.25, the government offered $30,781.83, the Alcoa list price at the time of taking was $42,847.18. The Court of Claims granted $36,420.10; no explanation of how the amount was reached appears, but the sum aproximates a compromise of half the difference between the amount the government claims and the Alcoa list price.

■■ A fair, just and reasonable compensation, we think, means one that takes into account all factors existing at the time of seizure—it does not necessarily mean that the owner is to be made whole for his

outlay, no matter what it may be; on the other hand and under the circumstances here present scrap value is surely not a fair, just or reasonable compensation. The government promulgated an order defining scrap aluminum as follows: "Scrap means all material or objects which are the waste or by-product of industrial fabrication, or which have been discarded on account of obsolescence, failure, or other reason, the principal ingredient of which by either weight or volume is metallic aluminum." Certainly plaintiff's property was not scrap within this definition. Nor can we, by any other definition, call it scrap.

The government treated it as scrap to be remelted, only because of its urgent need for aluminum. Without the existence of the freeze order and war condition, this material was more nearly finished, fabricated product. It could have been held by plaintiff and later used for the purposes for which it had been fabricated. Thus its value might have been equal to, or even greater than, the amount plaintiff here claims.

The trial court was without the guidance of any hard and fast rule in the situation thus presented; no precise measuring stick could be formulated to determine with exactness a just, fair and reasonable compensation. The government should not be mulcted because of its dire need for an essential product, and neither should the company be deprived of its property without reasonable compensation. The District Court was obliged to balance all considerations, including the fact of existence of war, and reach a figure which its "sense of fairness" dictates as a fair and just compensation. It must make an evaluation at best somewhat of an approximation, because there is no actual market. This we think the District Court undertook to do and the fact that the figure reached approximates the cost to plaintiff is not necessarily to be condemned. We reject the government's criterion of scrap value as being the critical figure as this would in itself ignore the government's definition of scrap and provide less than just compensation.

The trial court was not in error in allowing interest. The judgment is affirmed.